UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

MELISSA F. MORSE                                Chapter 7

    Debtor.                              Bankruptcy No. 04-04624M

MELISSA F. MORSE

    Plaintiff

v.                                              Adversary No. 05-09038M

IOWA STUDENT LOAN LIQUIDITY CORP.,
UNITED STATES OF AMERICA (Dept. of
Education)

    Defendants

EDUCATIONAL CREDIT MANAGEMENT CORP.,

    Intervenor-Defendant.

### ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY

On March 24, 2005, plaintiff Melissa F. Morse filed a complaint to determine the dischargeability of her student loan obligations to Iowa Student Loan Liquidity Corporation and the United States Department of Education pursuant to 11 U.S.C. § 523(a)(8).

The United States has consented to the discharge of its debt (doc. 14). On April 26, 2005, the court granted the motion to intervene filed by Educational Credit Management Corporation. Educational Credit is the present owner and holder of the notes evidencing the student loan obligations previously owed to Iowa Student Loan Liquidity Corporation. Educational Credit denies that the debt owed to it is dischargeable and requests that the court enter judgment against debtor.

Final trial was held May 9, 2006 in Mason City.  Attorney John H. Greve represented plaintiff Morse.  Attorney Christopher C. Foy appeared for Educational Credit.

The court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b) and 157(a) and the District Court's order of reference.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  The court now issues its findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.

## Findings of Fact

Melissa Morse, age 34, is single and has no dependents.  She has a lengthy history of mental health problems.  In January 2004, her mother, Cheryl Jones, was appointed her guardian and conservator by the Iowa District Court for Cerro Gordo County.  This appointment was made at about the same time that the state court ordered Morse to be committed to the Mental Health Institute in Independence, Iowa.  Jones is a registered nurse and has been in nursing since 1994.

Jones testified that her daughter has suffered mental health problems since she was a junior in high school.  Morse was formerly diagnosed with bipolar disorder.  Her current diagnosis is major depression.  At age 17, Morse was drugged and raped by four men.  She had a miscarriage.  She was hospitalized in the psychiatric ward of Mercy Medical Center in Mason City for a time during her junior year and again during her senior year of high school.  After graduating from high school, Morse traveled to Milwaukee and obtained work as a waitress.  In Milwaukee, Morse

2

was again placed in a medical facility for mental health care.

Jones had Morse transferred to the North Iowa Transition Center in Mason City in order that she could monitor her daughter's situation.  The North Iowa Transition Center is a care facility that provides community living for individuals with persistent mental illness.  In about the early 1990s, Morse began taking classes at Mount Mercy College in Cedar Rapids.  She was hospitalized twice in Cedar Rapids.  She later returned to the Mason City area and took classes offered by Buena Vista University at the Mason City campus.

For a period of about four to five years, Morse was able to manage without being hospitalized.  In 2003 and 2004, she again had repeated stays in mental health facilities.  In 2004, she lived for part of the year at the Mental Health Institute in Independence and then in a residential care facility in Charlotte, Iowa.  In July 2004, she was transferred to the North Iowa Transition Center.  In December 2004, Morse moved into her own apartment in Mason City.  She has not required hospitalization since that time.

In 2002, Morse received a B.A. degree in psychology from Buena Vista University.  She financed her education in part through four student loans now owed to Educational Credit.  The loans were disbursed in November 1993, January 1994, June 2002, and October 2002.  Exhibit C.

During 2002, Morse was employed by Walker's Shoe Store in Waterloo, Target Corporation, and Kinseth Hotel Corp.  She reported gross income of $7,552 on her federal income tax return

3

for tax year 2002. Exhibit 1. In 2003, she was employed by Target Corporation and Gerard Treatment Programs, L.L.C. Her gross wages for the year were $9,785. Id. In 2004, Morse was in mental health facilities for most of the year. She had gross wages of only $836 that year from employment at Sears. Id. In March 2005, Morse began working for her current employer, Opportunity Village. She earned gross wages of $11,750 for the year. Morse has in the past received Social Security disability benefits; she did not report receiving such benefits in the period from 2002 through 2005. During this four-year period, the only contribution made to a retirement plan on Morse's behalf was in the amount of $260.61 for 2003. Id. (W-2 issued by Target Corporation).

Morse is a personal care attendant at Opportunity Village, a residential care facility for individuals with mental retardation and other disabilities. She works with at least one other person, and sometimes with two or three others, in a cottage with 14 residents. Morse cooks meals, takes residents out on activities, and helps them with personal care, such as bathing, and other daily living skills.

When Morse was first hired, she was working fewer than 40 hours per week. In about April or May 2005, Morse was given a schedule to work a 40-hour week. Jones said that her daughter felt increased stress, became depressed, and was not able to handle working the extra hours. Morse called in sick and did not give sufficient advance notice that she would not be coming in to work. She was given a written warning, and her hours were

4

reduced.  Morse currently works an average of 32 hours per week.

About five or six months ago, Morse completed a course to become certified as a medical aide, which allows her to distribute medications.  She received a raise of 25 cents per hour for completing this training.  Her current wage is $8.77 per hour.

Morse has itemized the following monthly expenses:

```
        Rent                            $323
        Utilities                        150
        Telephone                         35
        Car expense:
          Gas                             80
          Repairs & maintenance           50
          Car insurance                   33
        Co-pay for medications            15
        Renters insurance                  8
        Food                             150
        Clothing                          20
        Miscellaneous                     25
        Total                           $889
```

Exhibit 2.  Morse's rent payment is a subsidized rate based on her income.  Her vehicle is a 1995 Corsica.  Jones said it is worth $250 and is not in good condition.  Morse drives from Mason City to Clear Lake for work, a round-trip distance of 20 miles. Morse takes prescription medications on a daily basis: 200 mg. Tegretol, 40 mg. Lexapro, 20 mg. Zyprexa.  Jones identified Lexapro as an anti-depressant and the other two medications as anti-psychotic drugs.  Morse receives $300 to $350 of Medicaid assistance per month.

Morse calculated her current net monthly income (gross income less amounts withheld) as one-twelfth of her wages for 2005, or $798 per month.  See Exhibit 2.  Educational Credit correctly points out that this figure does not account for her

5

most recent raise.  Educational Credit estimates that Morse should be able to generate net earnings of at least $975 per month.  This calculation is based on wages of $8.77 per hour for an average of 32 hours per week for 50 weeks per year, with deductions for federal and state income taxes, Social Security taxes and Medicare taxes that aggregate approximately 14 percent.

It is difficult to estimate Morse's future earning capacity when her most recent tax returns have varied so widely.  She had almost no income in 2004 and had her highest income in 2005.  However, it appears reasonable to assume that Morse's earnings will continue at the present rate.  While it is likely that Morse will receive cost of living raises, increased earnings may increase expenses.  Her rent, for example, is based on income.  Therefore, the court will determine Morse's ability to pay the student loan based on the assumption proposed by Educational Credit, that she will have net monthly income of $975 per month.

Terri Rabe is a social worker employed as a case manager for Chickasaw and Mitchell Counties.  She assists individuals in obtaining services under programs administered by the counties.  She monitors funding of programs, has contact with service providers, and meets face to face with each client at least once every three months.

Morse is one of Rabe's clients in the Medicaid Waiver program.  Participants in the waiver program must be eligible for Medicaid and must qualify for a particular program by reason of a medical condition or disability.  Morse was referred for the waiver program under the category of chronic mental illness.

6

Approval under this category requires a psychiatric evaluation of the applicant.  J. A. Jackson, M.D. made an evaluation of Morse in August 2005.  Eligibility is reviewed once a year.

Morse receives job coaching through the waiver program.  She meets with her job coach, an individual associated with the North Iowa Transition Center, to discuss how her job is going, whether work conditions are creating stress for her, and whether she has been keeping appointments scheduled with doctors and therapists.  Rabe communicates with the job coach and has periodic meetings with Morse.

Morse did not testify or attend the trial, at the recommendation of Rabe.  Jones agreed with the assessment that attending trial and hearing a reiteration of her medical history would have been too stressful for Morse.  Rabe and Jones are both concerned that stress could trigger a downturn in Morse's mental health.  Jones said that Morse cannot handle stress well and that currently, it is as much as she can manage to maintain her daily routine of work, eating and sleeping.

Jones is in regular contact with her daughter and sees her every week.  When Morse has weekends off, she stays with her mother.  Jones helps to ensure that her daughter takes her medication.  Otherwise, Jones said, Morse does not care for herself properly or function well.  She may not eat, sleep, bathe, or wash her clothes regularly.  She may throw away important papers.  She "can't differentiate between what she is supposed to do and what she is not supposed to do," Jones said.

Jones and Rabe agree that Morse has made progress and is

7

doing well at present.  When Rabe first met Morse in July 2004 at the North Iowa Transition Center, Morse had a flat affect and appeared confused.  When Morse was asked questions, she deferred to her mother to answer.  Rabe said Morse is now comfortable talking to her.

As of the date of trial, Morse had been employed by Opportunity Village for a little more than a year, the longest period she has held a job since high school.  She has lived on her own at her current address for about a year and a half.  Although Jones assists Morse with financial matters, Morse decides what bills to pay and writes her own checks.  Jones said that Morse would like to train to become an L.P.N.  Jones does not know whether Morse is capable of accomplishing that goal and doubts whether she could handle the stress of working as an L.P.N.

At trial, attorney Foy advised the court that Educational Credit now consents to the discharge of the three oldest loans and contests only the discharge of the fourth loan.  The loan at issue, originally in the amount of $4,400, has a principal balance of $3,830.26.  It accrues interest at a variable rate, currently 5.3 percent.  The total amount owed on the loan as of April 29, 2006 was $4,018.11 plus $0.56 per diem.  Exhibit C.

## Discussion

Morse asks the court to determine that the student loan obligation owed to Education Credit is dischargeable.  The parties agree that the loan at issue is an educational loan

within the meaning of § 523(a)(8).  The debtor bears the burden of proving by a preponderance of the evidence that excepting the debt from her discharge would impose an undue hardship on her.  Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991); Reynolds v. Pennsylvania Higher Education Assistance Agency (In re Reynolds), 425 F.3d 526, 529 (8th Cir. 2005).

The determination of undue hardship for purposes of § 523(a)(8) is made by examining the totality of circumstances.  The bankruptcy court must consider "(1) the debtor's past, present and future financial resources, (2) the debtor's reasonable and necessary living expenses, and (3) any other relevant circumstances."  Id.

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt–while still allowing for a minimal standard of living–then the debt should not be discharged.  Certainly, this determination will require a special consideration of the debtor's present employment and financial situation–including assets, expenses, and earnings–along with the prospect of future changes–positive or adverse–in the debtor's financial position.

Id., 425 F.3d at 532 (quoting Long v. Educational Credit Management Corp. (In re Long), 322 F.3d 549, 554-55 (8th Cir. 2003)).

The court first concludes that dischargeability of Morse's debt depends on her ability to pay the total debt.  See In re Reynolds, 303 B.R. 823, 838 & n.18 (Bankr. D. Minn. 2004) (debt will be excepted from discharge if surplus income matches total amount of amortized loan); see also Faktor v. United States (In re Faktor), 306 B.R. 256, 262-63 (Bankr. N.D. Iowa 2004) (court

may not grant partial discharge of student loan).

Morse has no significant assets and minimal financial resources. She relies on public assistance to maintain a minimal standard of living. The court considers that Morse has the ability to earn net wages at her current level of approximately $975 per month. She has listed expenses of $889 per month. The net of these figures is about $85. However, Morse has proposed an extremely spare budget. It includes nothing for a car payment or recreation, expenses that most Chapter 7 debtors incur. Some allowance should also be made for emergency expenses.

It appears that Morse has a minimal amount of disposable income that could be applied toward the loan at issue. Assuming a repayment period of ten to twelve years and a fixed interest rate of 5.3 percent, her monthly payment would be approximately $40. See, e.g., http://www.hsh.com; http://www.openhouse.net; http://ray.met.fsu.edu/~bret/amortize.html (amortization calculators). Monthly payments in the range of $20 would require a repayment period of about 25 years.

Morse has shown that her medical condition has had an adverse effect on her ability to sustain an employment situation. Following graduation from college, she has had a number of jobs for short periods of time. She has been employed at her current position for a little more than a year, the longest period she has held a job since high school. She has had frequent hospitalizations since high school. In 2004, she was hospitalized for much of the year.

Morse is somewhat dependent on others to help her maintain a

10

stable situation.  She receives the assistance of Rabe and her job coach through the Medicaid waiver program.  Her mother continues to act as her guardian and conservator and helps to ensure that Morse takes her medications.  Considering Morse's limited disposable income, her employment history and her medical condition, the court finds and concludes that Morse does not have the ability to repay the loan.  Excepting the debt from Morse's discharge would impose an undue hardship, and the debt should be discharged.

    IT IS ORDERED that debtor's student loan obligations to Iowa Student Loan Liquidity Corporation, Educational Credit Management Corporation, and the United States are discharged pursuant to 11 U.S.C. § 523(a)(8).

July 10, 2006

DATED AND ENTERED _____

                                      William L. Edmonds, Bankruptcy Judge

11